Andrew **HAMRICK, et al., Plaintiffs,**

v.

**UNION TOWNSHIP, OHIO, et al., Defendants.**

No. C–1–98–161.

United States District Court,
S.D. Ohio,
Western Division.

Jan. 12, 2000.

Jeffery Stephen Schwartz, Rosenhoffer, Nichols & Schwartz, Batavia, OH, for Andrew Hamrick, plaintiffs.

Michael Edward Maundrell, Schroeder Maundrell Barbiere & Powers, Cincinnati, OH, for Union Township Ohio, defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendants' Motion to Disqualify Counsel for Plaintiffs (doc. 31); Plaintiffs' Response (doc. 35); and Defendants' Reply (doc. 38).

## BACKGROUND

On February 27, 1998, Plaintiffs Andrew Hamrick, Bruce Keaton, Deborah Lovins–Vance, and Melissa Ross (hereinafter, collectively referred to as "Plaintiffs") filed suit against Defendants Union Township (Ohio), Michael Burns, Michael McMillan, Kenneth Geis, and Charles Knox (hereinafter, collectively referred to as "Defendants") (doc. 1). The Parties do not dispute the fact that at all relevant times herein, all of the Parties to this action were employed in some capacity by the police department of Defendant Union Township.

The Complaint sets forth ten causes of action, most of which are asserted against all Defendants and includes allegations of civil rights violations, sexual harassment, sexual discrimination, and retaliatory discharge (*Id.*). The allegations contained in the Complaint relating to Plaintiffs' participation in the investigation, as well as Plaintiffs' subsequent discharge for such participation, forms the basis for several of the stated causes of action (*Id.*).[1]

Plaintiffs allege in their Complaint that, at various times from 1986 through 1991, Defendant McMillan engaged in conduct amounting to sexual harassment and sexual discrimination (*Id.*). In addition, Plaintiffs allege that in an effort to shield Defendant McMillan from future scrutiny and salvage his career, the other Defendants engaged in the wrongful destruction of Defendant McMillan's personnel files and disciplinary records (*Id.*). Moreover, Plaintiffs assert that Defendants retaliated against Plaintiffs for their involvement in the investigation of Defendant McMillan (*Id.*). Plaintiffs contend that this retaliation resulted in their subsequent discharge for having sworn to statements critical of Defendant McMillan and/or the police department during the investigation in question (*Id.*).

In their Motion to Disqualify filed on July 15, 1999, Defendants assert that Plaintiffs' present counsel, Jeffrey S. Schwartz, a partner and/or shareholder of the firm Rosenhoffer, Nichols, and Schwartz L.L.P., conducted the investigation of McMillan and the other Defendants that was referred to in the Complaint (doc. 31). Moreover, Defendants attached to their Motion to Disqualify a letter dated August 4, 1995, from Mr. Schwartz to Judge William Walker of the Clermont County Court of Common Pleas, explaining his involvement in the investigation as follows:

> In closing, our office is presenting allegations brought to our attention by citizens who feel that crimes have been committed. Our office has no financial interest in the matters under consideration by the Court, and we are not part of any civil litigation presently pending on behalf of any party or contemplated by any allegedly aggrieved party. *Our office will not represent any present or potential party in civil litigation which*

---

1. The causes of action based on Plaintiffs' participation in the investigation of Defendant McMillan include: (1) discharge for engaging in protective activity; (2) retaliatory discharge; (3) wrongful discharge based upon sexual harassment; and (4) whistle blowing (doc. 1).

*may result from the investigation of allegations presented to the Court.* We are simply acting on behalf of citizens who have brought this matter to our attention, requesting us to petition the Court to exercise its power of appointment to ensure that all persons feel that the allegations have been fully investigated, regardless of the outcome of that investigation.

(doc. 31, Ex. B) (emphasis added).

Defendants further assert in their Motion that, during the course of his investigation, Mr. Schwartz met with: (1) Dennis Stemen of the Clermont County Sheriff's Department; (2) Assistant Prosecutor Daniel Breyer; (3) Assistant Prosecutor Donald White; and (4) Judge Walker in relation to the allegations against Defendants (doc. 31). In addition, as part of his investigation, Defendants assert that Mr. Schwartz obtained sworn statements from all Plaintiffs in this action (*Id.*). Furthermore, Defendants allege that Mr. Schwartz was allegedly a critical and sole witness to at least one of the claims of retaliation contained in the Complaint (*Id.*). Defendants submit that it is possible that Mr. Schwartz will be called as a witness to testify on behalf of his own clients, in order to corroborate the testimony of Plaintiffs' likely witnesses. Nonetheless, Defendants assert that it is also very likely that Mr. Schwartz will be called by Defendants as a fact and/or rebuttal witness in relation to his investigation of Plaintiffs' claims (*Id.*). Defendants argue that since Mr. Schwartz's testimony will be necessary to their defense, Mr. Schwartz and his firm must be disqualified from representing Plaintiffs in this action (*Id.*).

On August 24, 1999, Plaintiffs filed their Response and countered that, Mr. Schwartz's alleged testimony as a potential witness would be both cumulative, irrelevant and/or non-prejudicial to Plaintiffs' case. Moreover, the disqualification of Plaintiffs' counsel would be a "drastic step" that would infringe upon Plaintiffs' right to retain the counsel of their choice (doc. 35). Shortly thereafter, Defendants submitted their Reply emphasizing the fact that Mr. Schwartz's testimony is critical, especially since he and Plaintiff Vance were the only persons present when an alleged incident of retaliation occurred in his office during the investigation in question (doc. 38).

The Parties now move the Court for a ruling in this matter, and the Court finds that this matter is now ripe for our review.

## DISCUSSION

■ A motion to disqualify is the proper method for a party-litigant to bring an issue of conflict of interest or the breach of an ethical duty to the court's attention. *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir.1980). Confronted with such a motion, courts must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain the counsel of his choice. *Kitchen v. Aristech Chem.*, 769 F.Supp. 254, 257 (S.D.Ohio 1991). In order to resolve these competing interests, the courts must balance the interests of the public in the proper safeguarding of the judicial process together with the interests of each party to the litigation. *General Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 711 (6th Cir.1982).

The power to disqualify an attorney from a case is "incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Kitchen*, 769 F.Supp. at 256 (quoting *Ex Parte Burr*, 9 Wheat. 529, 22 U.S. 529, 531, 6 L.Ed. 152 (1824)). However, "the ability to deny one's opponent the services of his chosen counsel is a potent weapon." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir.1988). Motions for attorney disqualification should be viewed with extreme caution for they can be misused as techniques of harassment. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir.1982).

The applicable ethical standards in relation to this matter are the Canons, Ethical Considerations, and Disciplinary Rules embodied in the Code of Professional Responsibility, as adopted by the Supreme Court of Ohio. Specifically, this Motion concerns the Code of Professional Responsibility's Disciplinary Rule 5–101 and 5–102, which provides, in pertinent part:

**DR 5–101, "Refusing Employment When The Interests Of The Lawyer May Impair The Lawyer's Independent Professional Judgment."**

(B) A lawyer shall not accept employment in contemplated or pending litigation if the lawyer knows or it is obvious that the lawyer or a lawyer in the firm ought to be called as a witness, except that the lawyer may undertake the employment and the lawyer or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or the firm as counsel in the particular case.

DR 5–101(B) (1999).

**DR 5–102, "Withdrawal As Counsel When The Lawyer Becomes A Witness."**

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

DR 5–102(B) (1999).

Under Ohio's Code of Professional Responsibility, Ethical Consideration 5–9, "Incompatible Roles of Advocate and Witness," the Code further elaborates on the potential problems of an attorney appearing as both witness and advocate:

Occasionally, a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

EC 5–9 (1999).

As DR 5–101(B) indicates, there are a number of instances where the lawyer's testimony will not significantly impair the lawyer's role as an advocate, and, in extraordinary cases, the lawyer may remain in the case in order to avoid undue hardship to the client. *See Banque Arabe Et Internationale D'Investissement v. Ameritrust Corp.*, 690 F.Supp. 607, 614–15 (S.D.Ohio 1988) (holding that the attorney, and the law firm in which he was a partner, were not disqualified from representing debenture holders due to the fact that the attorney was not a necessary, essential, or sole witness to the transactions at issue). However, as EC 5–10[2] explains, "doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate." *See Baker v. BP America Inc.*, 768 F.Supp. 208, 215

**2.** *See* EC 5–10, "Circumstances Under Which Attorney May Serve as Counsel and Witness."

(N.D.Ohio 1991) (holding that the disqualification of an attorney and his law firm was warranted in view of the attorney's significant involvement in the events underlying the suit, as well as the fact that the attorney would likely be an important witness for several of the parties).

The Sixth Circuit has held than an attorney whose testimony would cause a conflict under DR 5–101 or DR 5–102 must either voluntarily withdraw from the case or face disqualification. *See General Mill Supply,* 697 F.2d at 715[3] (affirming the disqualification of an attorney due to the fact that he was found to be an essential witness in that action).

In *General Mill Supply,* the Sixth Circuit upheld the disqualification of an attorney in a suit that contained allegations of the abuse of process in a prior litigation. *Id.,* 697 F.2d at 716. The attorney's allegations concerning the prosecution of the prior case were central to the plaintiff's lawsuit in the then case at bar, and the court of appeals rejected the attorney's argument that he could prove his case with evidence other than his own testimony. *Id.* at 710–11. The Sixth Circuit also noted the inherent difficulties which would arise if the defendants were forced to attempt to discredit the testimony of a witness who was also the plaintiff's trial attorney. *Id.*

Plaintiffs counter with several arguments in opposing the disqualification of Mr. Schwartz and the law firm of Rosenhoffer, Nichols and Schwartz (doc. 35). First, for every one of the scenarios proposed by Defendants in their Motion, witnesses other than present counsel are available to testify on behalf of Defendants. Thus, even if the Court finds Mr. Schwartz alleged testimony to be legally relevant, his testimony would be merely cumulative and non-prejudicial to Plaintiffs' case. *See Stanwood Corp. v. Bar-*

*num,* 575 F.Supp. 1250, 1252 (W.D.N.C. 1983) ("While a court has the authority to disqualify an attorney from representation in a particular case, such action is ordinarily not taken without a strong showing [,and the] party seeking the sanction has the burden of proving that disqualification is indicated.").

Second, Plaintiffs argue that at this stage of the litigation, where meaningful discovery has been stayed pending the outcome of Defendants' Motion to Disqualify, it is impossible to say whether present counsel will be called as a witness or whether his alleged non-privileged testimony is actually prejudicial to Plaintiffs' case.

Third, Plaintiffs contend that Defendants have not met their burden of demonstrating that any of the alleged testimony by Mr. Schwartz will be necessary, prejudicial, or relevant to the facts at issue before the Court. *See Gould, Inc. v. Mitsui Mining & Smelting Co.,* 738 F.Supp. 1121, 1124 (N.D.Ohio 1990) (finding that the disqualification of counsel in an action which has been pending for some time is considered a drastic remedy which courts will not impose unless absolutely necessary).

■ Having reviewed this matter, this Court finds that Mr. Schwartz, and his firm of Rosenhoffer, Nichols and Schwartz, should be disqualified from representing Plaintiffs in this action for several reasons.

First, the Court finds it likely that there is a good possibility that Mr. Schwartz will be called as a witness by Defendants in order to either supplement or contradict the expected testimony of Mr. Stemen, Mr. White, Mr. Breyer, Judge Walker, and possibly others that may have been involved in his investigation of Defendant McMillan and the activities of the Union Township Police Department.[4]

---

3. *General Mill Supply* was decided shortly before the Sixth Circuit determined that interlocutory appeals were unavailable in attorney disqualification cases.

4. Defendants contend that Mr. Schwartz will also be called to testify regarding his conversations with reference to Plaintiffs' Equal Employment Opportunity Commission (hereinaf-

Second, the Court finds it highly likely that Mr. Schwartz's testimony will be needed by Defendants in recalling an incident that occurred in his office in April of 1996, in which Defendants allege will be detrimental to Plaintiffs' whistle-blowing claims.[5] In addition, it is also likely that some of the testimony that may be provided by Mr. Schwartz could be detrimental, prejudicial, or contrary to Plaintiffs' claims as now alleged in their Complaint. For example, Mr. Schwartz may have to testify that the prosecutor's office allegedly found no evidence of criminal wrongdoings as a result of Mr. Schwartz's investigation. Defendants argue that the prosecutors office refused to consider further inquiry into the matter, due to the "unsubstantiated charges" of sexual harassment and obstruction of justice alleged against Defendants (doc. 31, Ex. D).[6]

Third, the Court finds that if Mr. Schwartz and his firm were allowed to continue representing Plaintiffs in this matter, then he and his firm could be in violation of DR 5–101(B), 5–102(B), EC 5–9 and/or EC 5–10, without any recognized exception applicable to the facts at issue. *See General Mill Supply,* 697 F.2d at 704; *BP America,* 768 F.Supp. at 212–13;

Fourth, this Court notes that Mr. Schwartz recognized the possibility of a conflict as early as August 4, 1995, when he included in his letter to Judge Walker that, "[o]ur office will not represent any present or potential party in civil litigation which may result from the investigation of allegations presented to the Court" (doc. 31, Ex. B). We believe that was good legal advice then and remains applicable today. In addition, Mr. Schwartz admits that only limited discovery has taken place so far. Moreover, Plaintiffs have not argued that the disqualification of Mr. Schwartz would work a substantial hardship on the client. *See* DR 5–101(B)(4). Thus, obtaining new counsel in this action should not impose an undue hardship on Plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion to Disqualify Plaintiffs' Counsel, Rosenhoffer, Nichols & Schwartz L.L.P., from representing any Party in this proceeding (doc. 31). Accordingly, the firm of Rosenhoffer, Nichols & Schwartz L.L.P. shall promptly WITHDRAW from the representation of any Plaintiff in this matter.

In addition, the Court hereby VACATES the Final Pretrial Conference that was previously scheduled for February 28, 2000, and we RESCHEDULE this matter for a status conference on Wednesday, February 23, 2000, at 4:00 P.M., in order to ensure the readiness of this case for

ter, "EEOC") complaint, and the resulting EEOC investigation that was conducted by James McKenzie of the EEOC and Mr. Schwartz (doc. 31).

5. In Defendant's Reply (doc. 38), they allege that Mr. Schwartz is the only person, other than Plaintiff Vance, to witness an incident at Schwartz's law office in April of 1996. Specifically, Defendants alleged that the incident in question occurred as follows:

> Vance says she went to Schwartz's office to negotiate a criminal case that had been filed against one of Schwartz's clients by the Union Township Police Department. Vance should never have been in Batavia on such a mission because it was outside of Union Township's jurisdiction and was contrary to departmental policy and the policy of the Clermont County Prosecutor's office.

> When this was discovered and disciplinary proceedings were started, Vance lied about it. Schwartz then came to her assistance to help with reference to this disciplinary charge. Ultimately, Vance received a ten day discharge.

*Id.*

6. Attached to Defendant's Motion to Disqualify is a copy of a press statement released by the Clermont County Prosecutor's Office regarding the investigation of Mr. Schwartz:

> This office has consistently maintained that it is unethical to pursue criminal charges against any individual unless there is a reasonable chance that those charges can be proven beyond a reasonable doubt. There exist no such reasonable possibility in this case and the matter will be closed....

*Id.*

trial and to establish a new scheduling Order.

SO ORDERED.