DYNASTY APPAREL INDUSTRIES INC., Plaintiff,

v.

Richard RENTZ, Defendant.

Case No. C–3–00–571.

United States District Court,
S.D. Ohio,
Western Division.

Nov. 28, 2001.

Dennis Rose, Cleveland, OH, Sidney Williams, Columbus, OH, Aaron Resnick, for plaintiff.

Ronald Kozar, Dayton, OH, for defendant.

## DECISION AND ENTRY OVERRULING, AS MOOT, DEFENDANT'S MOTION TO REQUIRE JOINDER OF NECESSARY PARTIES (DOC. # 20); DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL (DOC. # 21); DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. # 34); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S REPLY MEMORANDUM OR, IN THE ALTERNATIVE, TO PERMIT IT TO FILE A SUR–REPLY (DOC. # 36); DECISION AND ENTRY OVERRULING, AS MOOT, PLAINTIFF'S MOTION TO COMPEL DISCOVERY (DOC. # 37); DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION TO ANSWER ADMISSIONS OUT OF TIME (DOC. # 39); DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION TO STRIKE (DOC. # 47); FURTHER PROCEDURES ESTABLISHED

RICE, Chief Judge.

This is the second lawsuit between these parties. Previously, Defendant Richard Rentz ("Rentz") sued, among others, Dynasty Apparel Industries, Inc. ("Dynasty"), seeking to recover a sum to which he believed he was entitled as a result of introducing the principals of Dynasty to Paul Warfield. *Rentz v. Dynasty Apparel Industries, Inc.*, Case No. C–3–96–205 (S.D.Ohio). That litigation resulted in a judgment in favor of Rentz. In June, 2000, the parties met in Cincinnati, Ohio, to discuss the possibility of a resolution of the dispute between them. According to Dynasty, they reached a settlement agreement on that date. When Rentz disagreed, Dynasty brought this lawsuit, requesting specific performance of the alleged settlement agreement. Numerous motions are pending in this litigation, which the Court addresses in the order in which they have been filed.[1]

### I. Defendant's Motion to Require Joinder of Necessary Parties (Doc. # 20)

With this motion, Rentz requests that the Court require the joinder of Dynasty's principals, Armando and Ignacio Mendez, as Plaintiffs in this litigation. Rentz points out that one of the terms of the settlement agreement, into which Dynasty *alleges* the parties entered, was that the Mendez brothers would be obligated to provide him a note in the amount of $105,000. In addition, Rentz would be required to release his judgment against Dynasty.[2] Rentz denies that the parties have entered into a settlement agreement. With this motion, Rentz attempts to avoid the possibility that this Court will decide that such an agreement exists, only to have the Mendez brothers deny the existence of same and refuse to pay him the $105,000. Rentz moves under Rule 19(a) of the Federal Rules of Civil Procedure, which provides:

> (a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the

---

1. By separate entry, the Court will rule upon Plaintiff's Motion for Partial Summary Judgment (Doc. # 35), with which it seeks summary judgment on Defendant's sixteen affirmative defenses.

2. Dynasty would also be required to pay Rentz the sum of $210,000.

court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

In *Soberay Machine & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 764 (6th Cir.1999), the Sixth Circuit reiterated that a Court must initially decide whether a person is necessary to the action and should be joined, steps which are governed by Rule 19(a). If the person cannot be joined, the Court must then decide, in accordance with Rule 19(b), whether in equity and good conscience the action should be permitted to proceed without joining that person. *Id.*

In response to this motion, Dynasty states that Rentz is attempting to misapply Rule 19(a), since complete relief between the parties can be accorded, even in the absence of the Mendez brothers. In addition, Dynasty states that the necessity of joining the Mendez brothers is moot, since they will stipulate to being bound by the judgment entered in this litigation. The Court finds it unnecessary to address the question of whether the Mendez brothers are necessary parties under Rule 19(a), since the offered stipulation will eliminate the need to resolve that question. Accordingly, the Court directs counsel for Dynasty to file, within 15 days of date, a stipulation by the Mendez brothers that they will be bound by any judgment entered herein, in other words, a stipulation that, if Dynasty prevails, the Mendez brothers will not refuse to deliver the note to Rentz. The Court overrules, as moot, the Defendant's Motion to Require Joinder of Necessary Parties (Doc. # 20).[3]

## II. Defendant's Motion to Disqualify Plaintiff's Counsel (Doc. # 21)

With this motion, Defendant requests that the Court disqualify Plaintiff's counsel, Gunster, Yoakley & Stewart ("GY & S"), as well as Raymond Miller ("Miller") and Aaron Resnick ("Resnick") of that law firm. The factual predicate of that motion is the fact that Michael Greene ("Greene"), an attorney with GY & S participated at the settlement conference, held in Cincinnati in June, 2000, and, thus, will be called as a witness in this lawsuit.[4] Rentz moves in accordance with DR 5–101(B), which provides:

(B) A lawyer shall not accept employment in contemplated or pending litigation if the lawyer knows or it is obvious that the lawyer or a lawyer in the firm ought to be called as a witness, except that the lawyer may undertake the employment and the lawyer or a lawyer in the firm may testify:
(1) If the testimony will relate solely to an uncontested matter.
(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

---

**3.** Dynasty has filed a Motion to Strike Rentz's Reply Memorandum or, in the alternative, to Permit It to File a Sur–Reply (Doc. # 36). The Court overrules the first branch of the motion, and sustains the second. As a consequence, it has considered the arguments contained in Dynasty's Sur–Reply when ruling upon Rentz's Motion to Require Joinder of Necessary Parties (Doc. # 20).

**4.** The Court has not conducted an evidentiary hearing on the Defendant's Motion to Disqualify (Doc. # 21). Indeed, no party has requested such a hearing. In *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704 (6th Cir.1982), the Sixth Circuit held that a court need not conduct an evidentiary hearing on a motion to disqualify, if the court does not need to resolve factual disputes in order to rule on that motion. Herein, no factual disputes have been raised by the Defendant's motion.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or the firm as counsel in the particular case.

DR 5–101(B) provides that a lawyer shall not accept employment to represent a party in a lawsuit, if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness. Thus, courts have held that, when one lawyer is disqualified under DR 5–101(B), because he will testify as a witness, his entire law firm and all other lawyers in it must also be disqualified. *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp., Inc.*, 546 F.2d 530, 538 (3rd Cir.1976), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977); *Estate of Andrews v. United States*, 804 F.Supp. 820, 830 (E.D.Va.1992); *Mason & Dixon Lines, Inc. v. Glover*, 1989 WL 135219 (N.D.Ill.1989), *affirmed*, 975 F.2d 1298 (7th Cir.1992). Therefore, if Greene is disqualified by that Rule because he will be a witness, even though he has not been identified as trial counsel, then all other attorneys associated with GY & S, including Miller and Resnick, must be disqualified, as well.

In *Hamrick v. Union Township*, 81 F.Supp.2d 876, 879 (S.D.Ohio 2000), the court set forth certain standards which are applicable to all requests that an attorney be disqualified:

A motion to disqualify is the proper method for a party-litigant to bring an issue of conflict of interest or the breach of an ethical duty to the court's attention. *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir.1980). Confronted with such a motion, courts must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain the counsel of his choice. *Kitchen v. Aristech Chem.*, 769 F.Supp. 254, 257 (S.D.Ohio 1991). In order to resolve these competing interests, the courts must balance the interests of the public in the proper safe-

guarding of the judicial process together with the interests of each party to the litigation. *General Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 711 (6th Cir.1982).

The power to disqualify an attorney from a case is "incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Kitchen*, 769 F.Supp. at 256 (quoting *Ex Parte Burr*, 9 Wheat. 529, 22 U.S. 529, 531, 6 L.Ed. 152 (1824)). However, "the ability to deny one's opponent the services of his chosen counsel is a potent weapon." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir.1988). Motions for attorney disqualification should be viewed with extreme caution for they can be misused as techniques of harassment. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir.1982).

*Id.* at 878. In *International Electronics Corp. v. Flanzer*, 527 F.2d 1288 (2nd Cir. 1975), the Second Circuit explained the rationale behind Rules 5–101(B):

The ultimate justification for the disqualification rule, in [Professor] Wigmore's view, was that the public might think that the lawyer is distorting the truth for the sake of his client. Another argument for disqualification is that the lawyer-witness will vouch for his own credibility in summing up to the jury—a powerful means of support for his own credibility. The argument that such tactic is to the detriment of his client obviously defeats itself. But the argument that it is unfair to the opponent has some merit. It is difficult, indeed, to cross-examine a witness who is also an adversary counsel concerning matters of fact, and, more particularly, on matters impeaching his credibility, within the bounds of propriety and courtesy owed to professional colleagues.

*Id.* at 1294. *See also*, *S & R, Inc. v. Unlimited Financing, Inc.*, 625 F.Supp. 1033, 1036–37 (S.D.Ohio 1985).

■ Herein, any unfairness which might befall Rentz, if Dynasty's counsel were not disqualified, would be greatly diminished by the fact that this litigation will be tried to the

Court, rather than to a jury. While Dynasty's counsel will not be able to vouch for their credibility to a jury, the Court will, nevertheless, order GY & S, Miller and Resnick disqualified from participating in the trial of this litigation. DR 5–101(B) contains a number of exceptions, which do not include instances where the lawsuit is to be tried to the court, rather than to a jury. Dynasty has failed to cite a single case in which a court decided not to apply DR 5–101(B), because the case would not be resolved by a jury.

In addition, the exceptions set forth in DR 5–101(B) fail to convince the Court that Greene should not be disqualified. Dynasty has not addressed exceptions 1–3, none of which appears remotely applicable. Rather, Dynasty focuses on the fourth exception and argues that disqualification of its trial counsel would work a substantial hardship. This Court cannot agree. Dynasty points out that GY & S has been involved in this litigation since its inception and that Rentz waited approximately seven months, after this suit had been filed, to move to disqualify its counsel. To the extent that Dynasty takes the position that Rentz waived the right to move to disqualify its counsel by failing to move in a more timely manner, this Court cannot agree. Courts have held that the witness/advocate rule embodied in DR 5–101(B) is mandatory and cannot be waived, because it is intended, in part, to protect the institutional concerns of the bar and the legal system. *See Estate of Andrews*, 804 F.Supp. at 824 (and cases cited therein). With respect to Dynasty's assertion that it will suffer a substantial hardship, if the Court disqualifies its counsel, that assertion could be made by any party when an opposing party seeks disqualification of its counsel. In other words, Dynasty has not indicated that it will suffer any greater harm than any entity which has had its counsel disqualified.

Accordingly, the Court sustains Defendant's Motion to Disqualify Plaintiff's Counsel (Doc. # 21).

### III. Plaintiff's Motion for Summary Judgment (Doc. # 34)

With this motion, Plaintiff seeks summary judgment on its claim that the parties entered into an enforceable settlement agreement when they met in Cincinnati on June 16, 2000. The Court begins its analysis by setting forth the standards which are applicable to all motions for summary judgment. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir.1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."

*InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

Dynasty bases its motion mainly upon Rentz's failure to answer its Requests for Admission in the time required by Fed. R.Civ.P. 36(a). Under that Rule, a request for admission "is admitted unless, within 30 days service of the request, ... the party to whom the request is directed serves ... a written answer...." It is not questioned that Rentz failed to serve his answers within the period permitted. Nevertheless, Rentz has filed a motion, seeking leave to serve his answers to Dynasty's Requests for Admission in an untimely manner. *See* Doc. # 39. According to Rentz, he failed to serve those answers within the time allowed by Rule 36(a), as a result of the neglect of his counsel. For reasons which follow, the Court will permit Rentz to serve untimely answers to Dynasty's Requests for Admission.

In *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (6th Cir.1997), the Sixth Circuit stated certain principles which must be followed when a party seeks leave to serve untimely answers to Requests for Admission:

A "district court has considerable discretion over whether to permit withdrawal or amendment of admissions." *American Auto. [Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir.1991) ]. The court's discretion must be exercised in light of Rule 36(b), which permits withdrawal (1) "when the presentation

of the merits of the action will be subserved thereby," and (2) "when the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Here there can be no doubt that the presentation of the merits of the jurisdictional issue was served by allowing the withdrawal of the admission. In regard to prejudice, "[t]he prejudice contemplated by [Rule 36(b)] is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth." *Brook Village North Assoc. v. General Elec. Co.*, 686 F.2d 66, 70 (1st Cir.1982). Prejudice under Rule 36(b), rather, "relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *American Auto.*, 930 F.2d at 1120.

*Id.* at 154.

■ In *Riley v. Kurtz*, 1999 WL 801560 (6th Cir.1999), the Sixth Circuit noted that "[t]he first prong of the test articulated in Rule 36(b) is satisfied 'when upholding the admission would practically eliminate any presentation on the merits of the case.' *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir.1995)." Herein, upholding Rentz's admissions would as a practical matter eliminate the need for a trial on the merits of Dynasty's claim and would cause this Court to enter summary judgment in favor of Dynasty.[5] Therefore, the question becomes whether Dynasty will suffer prejudice, as that term was defined by the Sixth Circuit in *Kerry Steel.* Dynasty argues that it will suffer prejudice, if Rentz is permitted to serve untimely answers to its Requests for Admission, because its Motion for Summary Judgment (Doc. # 34), will be rendered "a largely futile and very costly exercise." Doc. # 44 at 11.[6] Although the Court cannot eliminate the futility of having filed that motion, it can lessen the cost by requiring that Rentz compensate it for the expenses it incurred to file that motion, including reasonable attorney's fees. Dynasty would not have incurred those expenses if Rentz had served his answers to the Requests for Admission in a timely fashion. Based upon the foregoing, the Court sustains Rentz's Motion to Answer Admissions out of Time (Doc. # 39).[7] Rentz must serve those answers within 10 days from date. Since that ruling undermines the factual predicate for Dynasty's Motion for Summary Judgment (Doc. # 34),[8] by eliminating the evidentiary support for its proposition that the parties entered into a settlement agreement in June, 2000, the Court overrules that motion.[9]

5. The Court rejects Dynasty's argument that allowing Rentz to serve untimely answers would not subserve the presentation of the merits, because the law favors settlement agreements. Dynasty has not cited a single case in which a court held that there is no need to prove that parties entered into an agreement, because the agreement at issue was a settlement agreement. Herein, Rentz has denied that the parties entered into a settlement agreement, while Dynasty has alleged the opposite. Not allowing Rentz to serve untimely answers would eliminate the need for a trial to resolve the parties' dispute over that issue.

6. Dynasty can hardly claim that it was otherwise prejudiced, given that it has known, since long before this litigation was filed, that Rentz disputed that the parties had entered into a binding settlement agreement in June, 2000.

7. Above, the Court has noted that Rentz failed to serve his answers to Dynasty's Requests for Admission as a result of the neglect of his counsel. The Court has not, however, addressed the issue of whether that neglect was excusable. To obtain relief from a default judgment, a party must demonstrate excusable neglect, because Fed. R.Civ.P. 60(b) requires a showing of excusable neglect, inadvertence or mistake. *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 489 (6th Cir. 2000). By contrast, Rule 36 does not limit relief to instances where a party's neglect is excusable. Therefore, courts have held that excusable neglect is not a condition to relief under that Rule. *In re Durability, Inc.*, 212 F.3d 551, 556 (10th Cir.2000); *F.D.I.C. v. Prusia*, 18 F.3d 637, 640 (8th Cir.1994).

8. Dynasty has moved to strike Rentz's affidavit in opposition to its Motion for Summary Judgment (Doc. # 34), arguing that the affidavit is legally insufficient since it contradicts his admissions. *See* Doc. # 47. Since the Court will permit Rentz to serve untimely answers to Dynasty's Requests for Admission, it overrules Dynasty's Motion to Strike (Doc. # 47).

9. The Court overrules, as moot, Dynasty's Motion to Compel Discovery (Doc. # 37), with which it seeks a response to its Request for Production of Documents. Rentz argues that the letter of his counsel to Dynasty's counsel, under date of June

Within 10 days from date, Dynasty must inform the Court and Rentz of the identity of its new trial counsel. Within 20 days of that date, Dynasty must file a statement, indicating the amount of expenses, including reasonable attorney's fees, it incurred to file its futile Motion for Summary Judgment (Doc. # 34). Thereafter, the parties may brief the amount of such expenses in accordance with the Local Rules.

20, 2000, is a response to the Request for Production of Documents. A review of that letter, Exhibit B to Dynasty's Motion, convinces this Court that it is such a response. Rentz's counsel indicated therein that all responsive documents had been produced, except for those which were protected from disclosure by the attorney-client and work product privileges. In its Motion to Compel, filed after the date of the letter of Rentz's counsel, Dynasty has not argued that documents were improperly withheld under a claim of privilege.