# TWELFTH COURT OF APPEALS

Case Number: 12-14-00212-CV

On Appeal from the Cherokee County Court-at-Law No. CV9282

Robert Robinson

v.

Wells Fargo Bank, N.A.



FILED IN COURT OF APPEALS
12th Court of Appeals District

TYLER TEXAS
CATHY S. LUSK, CLERK

# Reply Brief of the Appellant

Robert Robinson, Pro Se
Appellant
16897 Pine Lane
Flint, Texas 75762
(903) 245-0908
cilantro518@yahoo.com

**TWELFTH COURT OF APPEALS**

**Case Number: 12-14-00212-CV**

**On Appeal from the Cherokee County Court-at-Law No. CV9282**

**Robert Robinson**

**v.**

**Wells Fargo Bank, N.A.**

# Reply Brief of the Appellant

Robert Robinson, Pro Se
Appellant
16897 Pine Lane
Flint, Texas 75762
(903) 245-0908
cilantro518@yahoo.com

# Table of Contents

I. Table of Authorities................2

II. Introduction...............5

III. Trustee's Deed is inadmissible...............6

IV. "Boat already sailed" on deemed admissions...............8

V. No evidence of privity between Kenneth W. Houston and Wells Fargo Bank...............11

VI. Well's Fargo's "no assignment needed" suggestion is a hoax...............13

VII. Wells Fargo claims forcible detainer is a judicial proceeding that bars interposition of constitutional claims (Brief of the Appellee at 21) ...............17

VIII. Appellee's bald assertion that "THERE WAS NO FABRICATION OF ANY EVIDENCE BY WELLS FARGO" does not comply with TRAP 38.1...............19

IX. Appellant's motion for sanctions is ripe for decision...............21

X. No Remorse...............21

XI. Conclusion and Prayer for Relief...............24

Signature...............25

Certificate of Service...............25

Certificate of Word Count...............26

# I. Table of Authorities

## Cases

*Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 848 (Tex.2005) ................15

*Bexar County v. Stewart,* 41 SW 2d 85 – 1931.................9

*Bolling v. FARMERS BRANCH INDEPENDENT SCH.,* 315 SW 3d 893 - Tex: Court of Appeals, 5th Dist.................5

*Boone v. TEXAS EMPLOYERS'INS. ASS'N,* 790 SW 2d 683, 688 - Tex: Court of Appeals, Tyler 1990................8

*Canton-Carter v. Baylor College of Medicine,* 271 SW 3d 928, 931 - Tex: Court of Appeals Houston (14th Dist) 2008.................5, 6, 20

*Chambers v. Nasco, Inc.,* 501 US 32, 51 - Supreme Court 1991.................20, 21

*DALLAS ANESTHES. v. Texas Anesthesia Group,* 190 SW 3d 891, 895 - Tex: Court of Appeals, 5th Dist.................5

*Davila v. World Car Five Star,* 75 SW 3d 537, 543 - Tex: Court of Appeals, 4th Dist. 2002................21

*De La O v. Housing Authority of City of El Paso,* 417 F. 3d 495, 501 - Court of Appeals, 5th Circuit 2005.................13

*Gleason v. Taub,* 180 S.W.3d 711, 713 (Tex.App.-Fort Worth 2005, pet. denied) ................15

*House v. Houston Waterworks Co.,* 88 Tex. 233, 31 S.W. 179, 179 (1895) ................15

*IN RE CARRSOW-FRANKLIN,* Case No. 10-20010 (RDD). Bankr Court, SD New York January 28, 2015................ 10, 16

*Lawton v. State,* 913 S.W.2d 542, 554 (Tex.Crim.App.1995)` ................6

*Mansfield State Bank v. Cohn,* 573 SW 2d 181, 184-185 - Tex: Supreme Court 1978................7

*Marshall v. Vise*, 767 SW 2d 699, 700 - Tex: Supreme Court 1989...............7

*McGlothlin v. Kliebert*, 672 SW 2d 231, 232 - Tex: Supreme Court 1984...............10, 18

*MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999) ...............15

*Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) ...............11

*Michel v. State,* 350 U.S. at 99, 76 S.Ct. at 163...............18

*Minnick v. State Bar of Texas*, 790 SW 2d 87,89 - Tex: Court of Appeals, 3rd Dist. 1990...............18

*Miller v. Homecomings Financial, LLC*, 881 F. Supp. 2d 825, 832 - Dist. Court, SD Texas 2012...............11, 12

*Mitchell v. Citifinancial Mortg. Co.*, 192 SW 3d 882 - Tex: Court of Appeals, 5th Dist. 2006...............13, 14

*Moore v. Sims,* 442 U. S. 415, 426 (1979) ...............17, 18

*Mortgage Electronic Registration Systems v. Knight*, No. 09-04-452 CV, 2006 WL 510338, (Tex.App-Beaumont March 2, 2006, no pet.) (mem. op) ...............14

*Musicus v. Westinghouse Elec. Corp.*, 621 F. 2d 742, 744 - Court of Appeals, 5th Circuit 1980...............21

*Pennzoil Co. v. Texaco Inc.*, 481 US 1, 14 (1987) ...............18

*Powelson v. US BANK NAT. ASS'N*, 125 SW 3d 810, 811 - Tex: Court of Appeals, 5th Dist. 2004...............14

*Rodriguez v. CITIMORTGAGE, INC.*, Tex: Court of Appeals, 3rd Dist. 2011...............13

*Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 593-594 (Dec. 10, 2013) ...............19

*Texaco, Inc. v. Pennzoil, Inc.* 729 S.W.2d 768, 856-58 (Tex.App. 1987, writ denied) ...............18

*Texas Dep't of Transp. v. Able,* 35 S.W.3d 608, 617 (Tex. 2000) ...............7

*United States Fidelity & Guar. Co. v. Goudeau*, 272 SW 3d 603, 611 - Tex: Supreme Court 2008................7

*Wade v. COM'N FOR LAWYER DISCIPLINE*, 961 SW 2d 366, 377 - Tex: Court of Appeals 1997................17

*West v. Brenntag Sw., Inc.,* 168 S.W.3d 327, 334 (Tex.App.-Texarkana 2005, pet. denied) ................15

*Williams v. Eggleston,* 170 U.S. 304, 309, 18 S.Ct. 617, 42 L.Ed. 1047 (1898) ................15

*Younger v. Harris,* 401 U.S. 37 (1971) ................17

## Statutes and Rules

TEX. LOC. GOV'T CODE ANN. § 192.007(a) ................12

TRAP 38.1, 38.2................5, 20

Texas Rule of Civil Procedure TRCP 192.3(a) ................10

Texas Rules of Evidence Rule 406................10

## MERS Rules

MERSCORP, INC. RULES OF MEMBERSHIP; REQUIRED ASSIGNMENTS FOR FORECLOSURE & BANKRUPTCY................11, 12

## Newspaper Articles

*"JPMadoff Chapter 7 Asks Jamie Dimon, 'At Long Last, Have You Left No Sense of Decency?'"*; Forbes; 2/05/2015; by Laurence Kotlikoff................16, 17, 22, 23

*Judge faults Wells Fargo in 'shocking' foreclosure;* Boston Globe; AP March 9, 2014................21

*NY Federal judge slams Wells Fargo for forged mortgage docs* ; New York Post; January 31, 2015; by Catherine Curan................21

## II. Introduction

Texas Rules of Appellate Procedure do not contemplate that an appellee's brief can simply dodge an appellant's issues by refusing to address them. "Only when we are provided with proper briefing may we discharge our responsibility to review the appeal and make a decision that disposes of the appeal one way or the other." *Bolling v. FARMERS BRANCH INDEPENDENT SCH.*, 315 SW 3d 893 - Tex: Court of Appeals, 5th Dist. *See also* TRAP 38.2(a)(2): ("When practicable, the appellee's brief should respond to the appellant's issues or points in the order the appellant presented those issues or points").

Also, with limited exceptions which do not apply to this point, 38.1 and specifically 38.1(i) apply equally to the appellee. See TRAP 38.2(a)(1): "An appellee's brief must conform to the requirements of Rule 38.1". See also *DALLAS ANESTHES. v. Texas Anesthesia Group*, 190 SW 3d 891, 895 - Tex: Court of Appeals, 5th Dist. (38.1(f) applies to appellee under 38.2(a)(1)).

Thus, when 38.1(i) requires "a clear and concise argument for the contention made with appropriate citations to authorities and the record", the appellee is also subject to the requirement. "This requirement is not satisfied by merely uttering brief, conclusory statements unsupported by legal citations." *Canton-*

*Carter v. Baylor College of Medicine*, 271 SW 3d 928, 931 - Tex: Court of Appeals Houston (14th Dist) 2008.

Appellee's brief fails to specifically or adequately address any of Appellant's issues, but rather vaguely asserts that the "only issue" provision of forcible detainer law means that questions of judicial misconduct, attorney misconduct, fabrication of evidence, and standing cannot be raised by a forcible detainer defendant because such issues are "outside the scope" of forcible detainer. Appellee doesn't even bother to deny that its trial counsel had a 1-hour private meeting with the trial judge where the trial judge and counsel "went over the case" in secret.

Because appellate courts are prevented from "advancing arguments on behalf of either party" *Lawton v. State,* 913 S.W.2d 542, 554 (Tex.Crim.App.1995), the Court should sustain Appellant's issues because Wells Fargo has effectively conceded them.

### III. Trustee's Deed is inadmissible

Throughout these proceedings and in the court below, Appellant has repeatedly stated that in the court below, he objected to Wells Fargo's introduction of a trustee's deed – a document which contradicts Wells Fargo's deemed admissions.

(See "Appellant's Verified Motion to Disqualify Barrett, Daffin, Frappier, Turner & Engel LLP and to Strike Wells Fargo's Pleadings" at 7). *Now see* Appellant's "Response To Wells Fargo's Motion For Summary Judgment" CR 664: Trustee's Deed "contradicts Wells Fargo's Deemed Admissions No's 9 and 10." **"Respondent objects to Wells Fargo's introduction of the putative trustee's affidavit."** (bold in original). This point is dispositive because as stated by the Texas Supreme Court:

> "Admissions produce two results: they relieve the requesting party's burden of proving the admitted matter and prevent the admitting party from disputing the same." *United States Fidelity & Guar. Co. v. Goudeau*, 272 SW 3d 603, 611 - Tex: Supreme Court 2008. "An admission once admitted, deemed or otherwise, is a judicial admission, and a party may not then introduce testimony to controvert it." *Marshall v. Vise*, 767 SW 2d 699, 700 - Tex: Supreme Court 1989. "We hold that a party waives the right to rely upon an opponent's deemed admissions unless objection is made to the introduction of evidence contrary to those admissions." *Ibid.*

Wells Fargo's Appellee's Brief continues to sing the song of the robo-signing banks —that Texas' forcible detainer courts are rubber stamps for document fraud, but no trustee's deed = no right to possession. See *Texas Dep't of Transp. v. Able,* 35 S.W.3d 608, 617 (Tex. 2000). A successful challenge to a trial court's evidentiary rulings usually requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. See also *Mansfield State Bank v. Cohn*, 573 SW 2d 181, 184-185 - Tex: Supreme Court 1978: "There cannot

be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves."

Accordingly, **Appellant objects to the following statements in Appellee's Brief:**

> "Wells Fargo presented valid, factually sufficient evidence to the Trial Court" (p.9); "As evidenced by the Substitute Trustee's Deed, Wells Fargo purchased the property at the non-judicial foreclosure sale held on May 5, 2009" (p.10); "A certified copy of the Trustee's Deed was filed as part of and in support of Wells Fargo's Motion for Summary Judgment." (p.10); "Appellant tendered discovery to Appellee that covered allegations outside the scope of a forcible detainer lawsuit." (p.12); "THERE WAS NO FABRICATION OF ANY EVIDENCE BY WELLS FARGO" (p.18); and "As the signatory of the Note and Deed of Trust, only Houston would have been in direct privity with Wells Fargo." (p.20).

## IV. "Boat already sailed" on deemed admissions

In particular, the statements: "Appellant tendered discovery to Appellee that covered allegations outside the scope of a forcible detainer lawsuit" and "THERE WAS NO FABRICATION OF ANY EVIDENCE BY WELLS FARGO" appear to challenge the deemed admissions, but that boat has already sailed.

In *Boone v. TEXAS EMPLOYERS'INS. ASS'N*, 790 SW 2d 683, 688 - Tex: Court of Appeals, Tyler 1990, this Court said:

> "the trial judge may only permit withdrawal of deemed admissions when the party seeking the same presents sufficient evidence to establish good cause for his failure to make timely answers to the requested admissions,

and then only if the court further finds that the withdrawals can be ordered without causing undue prejudice to the party relying on the admissions, and that the presentation of the merits of the action will be subserved by the withdrawal." *The* court further stated "the burden of proof on *all three requirements"* is on "the party seeking withdrawal." Id. at 689.

Wells Fargo was unable to meet its burden, but scheduled a hearing on a frivolous motion to strike the deemed admissions (claiming that Wells Fargo "will not be unduly prejudiced if the Court strikes the admissions" CR 432 ); conflated the hearing with a motion for summary judgment and plea to the jurisdiction; did not argue for withdrawal of admissions at the hearing; met privately with the trial judge for an hour; and submitted a final order –which the judge signed- denying the motion to strike the deemed admissions. Wells Fargo did not appeal denial of its motion to strike deemed admissions. (See "Appellant's Verified Motion to Disqualify Barrett, Daffin, Frappier, Turner & Engel LLP and to Strike Wells Fargo's Pleadings" at 2-3).

Regarding discovery requests "outside the scope of a forcible detainer lawsuit"-as far back as 1931 Texas courts said that the tenant had an adequate remedy at law because the <u>tenant could raise any legal defenses to his possession of the premises in the justice court</u> and could pursue other relief in the district court for damages not within the jurisdiction of the justice court. *Bexar County v. Stewart*, 41 SW 2d 85 – 1931. Citing *Bexar County*, the Texas Supreme Court said a

tenant's "adequate remedy at law is to defend himself in the justice court suit."

*McGlothlin v. Kliebert*, 672 SW 2d 231, 232 - Tex: Supreme Court 1984.

Appellant's answer pled fraud on the court, illegality, and Wells Fargo's lack of standing (CR 124 -179 amended by 253-268). Texas Rules of Evidence Rule 406 Habit; Routine Practice provides:

> "Evidence of the routine practice of an organization whether corroborated or not and regardless of the presence of eyewitnesses is relevant to prove the conduct of the organization on a particular occasion was in conformity with the habit or routine practice."

Concomitantly, Texas Rule of Civil Procedure TRCP 192.3(a) provides:

> "In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, <u>whether it relates to the claim or defense of the party seeking discovery</u> or the claim or defense of any other party. It is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Along this same vein, a federal court recently found

> "substantial evidence that Wells Fargo's administrative group responsible for the documentary aspects of enforcing defaulted loan documents created new mortgage assignments and forged indorsements when it was determined by outside counsel that they were required to enforce loans."
>
> *IN RE CARRSOW-FRANKLIN*, Case No. 10-20010 (RDD). Bankr Court, SD New York January 28, 2015.

As here, the *Carrsow* court was asked to determine issues of fraud, standing, and Illegality when the debtor objected to a claim filed by Wells Fargo Bank, NA on the basis that Wells Fargo is not the holder or owner of the note and beneficiary of the deed of trust upon which the claim is based and therefore lacks standing to assert the claim. Wells Fargo had previously sold the note to Freddie Mac thus prompting the question: "if Freddie Mac was the owner of the loan, as both Wells Fargo and Freddie Mac contended, why was Claim No. 1-1 filed by Wells Fargo not as Freddie Mac's agent or servicer, but, rather, in its own name?"

Here, it is not disputed that Wells Fargo sold the promissory note to a securitization trust and there is zero evidence of any assignment of the deed of trust to Wells Fargo. Legally insufficient evidence or "no evidence" of a vital fact exists when the record contains a complete absence of evidence of a vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

## V. No evidence of privity between Kenneth W. Houston and Wells Fargo Bank

In *Miller v. Homecomings Financial, LLC*, 881 F. Supp. 2d 825, 832 - Dist. Court, SD Texas 2012, the court said:

"Banks are neither private attorneys general nor bounty hunters, armed with a roving commission to seek out defaulting homeowners and take away their homes in satisfaction of some other bank's deed of trust." TEX. LOC. GOV'T CODE ANN. § 192.007(a) "declares that any transfer or assignment of a recorded mortgage must also be recorded in the office of the county clerk" and "the absence of such required filings is arguably some evidence that no such assignment or transfer has occurred." Id. at 830.

In addition, RULE 8 (e)(i) of "MERSCORP, INC. RULES OF MEMBERSHIP; REQUIRED ASSIGNMENTS FOR FORECLOSURE & BANKRUPTCY" require that:

"The note owner or the note owner's servicer shall cause the Certifying Officer to execute the assignment of the Security Instrument from MERS to the note owner's servicer, or to such other party expressly and specifically designated by the note-owner before initiating foreclosure proceedings or filing Legal Proceedings and promptly send the assignment of the Security Instrument (in recordable form) for recording in the applicable public land records."[1]

Nevertheless, Wells Fargo admits (Deemed Admission No. 1) and Cherokee County land records confirm -that no such assignment was ever recorded transferring the Houston deed of trust to Wells Fargo. Wells Fargo filed the instant legal proceedings on August 20, 2012 and CR 222-223 dated June 27, 2013 demonstrates the lack of the required assignment.

Appellant **does not object** to the following statements in Appellee's Brief:

"Therefore Appellants established as a matter of law that it is legally entitled to possession of the Property."(p.19); and "Appellee is not a party to the Deed of Trust which created the lien which was foreclosed on and purchased by Appellant on May 5, 2009. To the contrary, Kenneth W.

---

[1] www.mersinc.org/component/docman/doc_download/366-mers...

Houston (who is deceased) is the borrower of record and the signatory on the Note, Deed of Trust, and associated loan documents. Appellee is not mentioned in either the Note or Deed of Trust; nor is Appellee mentioned in any of the origination documents. Appellee did not assume the loan or otherwise become bound by its provisions and Houston did not assign his rights under the Note or the Deed of Trust to Appellee." (p.20).

## VI. Well's Fargo's "no assignment needed" suggestion is a hoax

"Judges are not like pigs, hunting for truffles buried in briefs." *De La O v. Housing Authority of City of El Paso*, 417 F. 3d 495, 501 - Court of Appeals, 5th Circuit 2005.

Appellee's brief (p. 16-17) presents a series of bizarrely inapposite cases which tend to support Appellant's position on this issue. See *Rodriguez v. CITIMORTGAGE, INC.*, Tex: Court of Appeals, 3rd Dist. 2011: "On February 19, 2009, the <u>deed of trust was assigned by the note holder</u> (Mortgage Electronic Registration Systems Inc., as nominee for Primary) to Citimortgage." "At trial before the county court at law, Citimortgage introduced into evidence, <u>without objection</u>, certified copies of Rodriguez's deed of trust, <u>the assignment of the deed to Citimortgage</u>, and the substitute trustee's deed of the property." See *Mitchell v. Citifinancial Mortg. Co.*, 192 SW 3d 882 - Tex: Court of Appeals, 5th Dist. 2006: "Specifically, appellants contend that Citifinancial's complaint for forcible entry and detainer did not sufficiently describe the land or premises for

which it sought possession." Id. at 883. "Appellants make no argument and provide no authorities pertaining to the sufficiency of the evidence, thereby waiving any such argument." Ibid. "Citifinancial, <u>holder of the note for the Deed of Trust</u>, executed its power of sale under the Deed of Trust and acquired the property." Ibid. See *Powelson v. US BANK NAT. ASS'N*, 125 SW 3d 810, 811 - Tex: Court of Appeals, 5th Dist. 2004: "Appellant Richard Powelson contends in a single point of error that the evidence supporting the judgment is insufficient as a matter of law. Specifically, Powelson contends that U.S. Bank's complaint for forcible detainer did not sufficiently describe the land or premises for which it sought possession and failed to allege a right to immediate possession." See *Mortgage Electronic Registration Systems v. Knight*, No. 09-04-452 CV, 2006 WL 510338, (Tex.App-Beaumont March 2, 2006, no pet.) (mem. op): "Knight purchased the property with the proceeds of a loan from Mortgage Electronic Registration Systems, Inc. ('MERS'), and she secured her loan with a deed of trust. Knight defaulted on the loan and <u>MERS foreclosed</u> as allowed by the deed of trust." "Knight appealed the judgment to the county court at law and it awarded possession of the premises to her." "As <u>Knight did not file an appellate brief</u>, we have no response opposing issue two's arguments."

While pointing to no case which states a bank can enforce a deed of trust without an assignment of either the note or the deed of trust, Wells Fargo concedes that in order to prevail in this forcible detainer suit it must demonstrate a landlord-tenant relationship exists between Appellant and Wells Fargo in order for a forcible detainer court to have jurisdiction (Appellee's brief at 15). Then Wells Fargo cites a provision of the Houston deed of trust and claims it has a right to enforce a contract which was never assigned to Wells Fargo.

> A plaintiff must have standing to bring a lawsuit. *Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 848 (Tex.2005). Standing deals with whether a litigant is the proper person to bring the lawsuit. *West v. Brenntag Sw., Inc.,* 168 S.W.3d 327, 334 (Tex.App.-Texarkana 2005, pet. denied). Without a breach of a legal right *belonging to a plaintiff*, that plaintiff has no standing to litigate. *Gleason v. Taub,* 180 S.W.3d 711, 713 (Tex.App.-Fort Worth 2005, pet. denied). A person may not sue for the breach of a contract unless he is a party or third-party beneficiary to the contract. *See, e.g., Williams v. Eggleston,* 170 U.S. 304, 309, 18 S.Ct. 617, 42 L.Ed. 1047 (1898); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 651 (Tex.1999); *House v. Houston Waterworks Co.,* 88 Tex. 233, 31 S.W. 179, 179 (1895).

How does a party who is not mentioned in any origination document demonstrate that he was injured by the breech of a contract to which he is not a party? The well-settled answer is that he must demonstrate that those rights were assigned to him either directly by the Lender or indirectly through an

unbroken chain of assignments tracing back to the Lender. An exception to the general rule occurs when the promissory note –at some point in the chain of assignments- has been endorsed "in blank" by either the original lender or a valid assignee so that anyone with possession of the note has the right to enforce the note. "[U]nder Texas law a person in possession of a note indorsed in blank may enforce the note and a related deed of trust or mortgage even if the noteholder does not have a valid assignment of the mortgage or deed of trust." *IN RE CARRSOW-FRANKLIN*, Case No. 10-20010 (RDD). Bankr. Court, SD New York January 28, 2015.

Again here, there is a complete absence of any evidence that Wells Fargo has standing to enforce the Houston Deed of Trust because there is no assignment and there is no evidence that Wells Fargo owns or holds any note signed by Kenneth Houston.

See *"JPMadoff Chapter 7 Asks Jamie Dimon, 'At Long Last, Have You Left No Sense of Decency?'"*; Forbes; 2/05/2015; by Laurence Kotlikoff:

> "And proving the old precept that every lawyer gets the client he deserves, the authors give two very recent examples of JPMorgan Chase being represented in foreclosure actions — one in Brooklyn and one in Westport, Connecticut — by dishonest attorneys. In the Brooklyn case, the judge found that JPMorgan Chase committed a 'fraud on the Court" when, among

other things, the lawyer filed false affidavits claiming that JPMorgan Chase owned the mortgage it was foreclosing on when it didn't".[2]

## VII. Wells Fargo claims forcible detainer is a judicial proceeding that bars interposition of constitutional claims (Brief of the Appellee at 21).

No citation is needed to explain that state courts and federal courts are separate systems which unify in a single supreme court whose mandates are then observed in every inferior court whether state or federal. Although federal courts have the power to enjoin state court proceedings, principles of comity and federalism as announced in *Younger v. Harris,* 401 U.S. 37 (1971) were widely held to require all state court judicial proceedings to permit the interposition of constitutional claims. See i.e. *Wade v. COM'N FOR LAWYER DISCIPLINE,* 961 SW 2d 366, 377 - Tex: Court of Appeals 1997("Regarding appellant's due process claims, a party is entitled to a reasonable opportunity to have such issues heard and determined by the court.")

The Younger Abstention Doctrine which required federal courts to abstain from interfering in state court proceedings did not apply "where state law clearly bars the interposition of the constitutional claims." *Moore v. Sims,* 442 U. S. 415, 426 (1979). Later the court said that:

---

[2] http://www.forbes.com/sites/kotlikoff/2015/02/05/jpmadoff-chapter-7-asks-jamie-dimon-

"Not only would federal injunctions [involving a State's interest in 'forcing persons to transfer property in response to a court's judgment'] interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained. So long as those challenges relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." *Pennzoil Co. v. Texaco Inc.*, 481 US 1, 14 (1987). "The question is whether that challenge can be raised in the pending state proceedings subject to conventional limits on justiciability [sp]. On this point, Texas law is apparently as accommodating as the federal forum. Certainly, abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." *Moore v. Sims*, id. at 425-426 .

A tenant's "adequate remedy at law is to defend himself in the justice court suit."

*McGlothlin v. Kliebert*, 672 SW 2d at 232.

"The constitutionality of a statute is an affirmative defense that must be timely pled; otherwise, it is waived." *Texaco, Inc. v. Pennzoil Co.*, 729 SW 2d 768, 856-857 - Tex: Court of Appeals 1987. "No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of that right." *Michel v. State*, 350 U.S. at 99, 76 S.Ct. at 163 "Virtually any right, including a constitutional right, may be waived if not timely pleaded or otherwise properly presented to the trial court. *See Texaco, Inc. v. Pennzoil, Inc.* 729 S.W.2d 768, 856-58 (Tex.App. 1987, writ denied), cert. dism'd, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). In the absence of any pleading or other showing that he raised the issue of the alleged violation of his due process rights in the trial court and obtained a ruling thereon, Minnick must be considered to have waived any such complaint. *See* Tex. R.App.P. 52(a)." *Minnick v. State Bar of Texas*, 790 SW 2d 87,89 - Tex: Court of Appeals, 3rd Dist. 1990.

Notwithstanding the foregoing, it should be noted that the Supreme Court drastically narrowed the scope of Younger abstentions in *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 593-594 (Dec. 10, 2013):

> "Divorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest. See Tr. of Oral Arg. 35-36. That result is irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule.' *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (quoting *Colorado River,* 424 U.S., at 813, 96 S.Ct. 1236). In short, to guide other federal courts, we today clarify and affirm that *Younger* extends to the three 'exceptional circumstances' identified in *NOPSI,* but no further."

## VIII. Appellee's bald assertion that "THERE WAS NO FABRICATION OF ANY EVIDENCE BY WELLS FARGO" does not comply with TRAP 38.1

This contention is not supported by the record and is contradicted by Wells Fargo's deemed admissions. On December 5, 2014 Appellant filed "Appellant's Verified Motion to Disqualify Barrett, Daffin, Frappier, Turner & Engel LLP and to Strike Wells Fargo's Pleadings" (motion for sanctions) wherein he described a nation-wide pattern of fabrication of false documents by Wells Fargo's outside counsel which were then presented to courts. In the court below, Wells Fargo

admitted to filing these same false documents in this case. On December 18, 2014 this Court notified the parties that it was passing on the motion for sanctions after Wells Fargo failed to file a response. Appellant by reference, incorporated the motion for sanctions into his original brief. After the passage of 40 plus days, the totality of Wells Fargo's response is:

"THERE WAS NO FABRICATION OF ANY EVIDENCE BY WELLS FARGO" and

"Appellant tendered discovery to Appellee that covered allegations outside the scope of a forcible detainer lawsuit."

Because the requirement of TRAP 38.2(a)(1), 38.1(i) is "not satisfied by merely uttering brief, conclusory statements unsupported by legal citations" *Canton-Carter v. Baylor College, ibid,* Wells Fargo has failed to show any reason why "Appellant's Verified Motion to Disqualify Barrett, Daffin, Frappier, Turner & Engel LLP and to Strike Wells Fargo's Pleadings" should not be granted.

In explaining a court's inherent power to sanction reprehensible conduct, the U.S. Supreme Court said:

Respondent's "entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court, and the conduct sanctionable under the Rules was intertwined within conduct that only the inherent power could address. In circumstances such as these in which all of a litigant's conduct is deemed sanctionable, requiring a court first to apply Rules and statutes containing sanctioning provisions to discrete occurrences before invoking inherent power to address remaining

instances of sanctionable conduct would serve only to foster extensive and needless satellite litigation, which is contrary to the aim of the Rules themselves." *Chambers v. Nasco, Inc.*, 501 US 32, 51 - Supreme Court 1991.

## IX. Appellant's motion for sanctions is ripe for decision.

"A district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it. A motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the attention of the court." *Musicus v. Westinghouse Elec. Corp.*, 621 F. 2d 742, 744 - Court of Appeals, 5th Circuit 1980 (internal citations omitted).

Wells Fargo concedes that "Appellee believes that oral argument is not necessary for this Court to understand the issues presented in the briefs of the parties." (Brief of Appellee at 7). "[P]roceedings for sanctions must afford a party notice and an adequate opportunity to be heard. A plaintiff's pleadings satisfy this notice requirement and allow the party to defend the claims against him." *Davila v. World Car Five Star*, 75 SW 3d 537, 543 - Tex: Court of Appeals, 4th Dist. 2002 (internal citations omitted). Here, Wells Fargo has received both notice and an adequate opportunity to be heard.

## X. No Remorse

Newspaper articles appearing in the New York Post (*NY Federal judge slams Wells Fargo for forged mortgage docs*)[3] and the Boston Globe (*Judge faults Wells Fargo in 'shocking' foreclosure*)[4], report recent court decisions describing Wells Fargo's conduct as:

> "outrageous and reprehensible"; "deceptive and intentional conduct" that "displayed a complete and total disregard for the rights of David and Crystal Holm"; "Defendant Wells Fargo operated from a position of superiority provided by its enormous wealth,"; "Wells Fargo's decision took advantage of an obviously financially vulnerable family," the judge continued, noting that Wells Fargo showed no evidence of remorse for the harm caused; "In fact, the Court recalls the lack of remorse and humanity illustrated by a Wells Fargo corporate representative who testified, 'I'm not here as a human being. I'm here as a representative of Wells Fargo,' "; and "shocking".

In these 2 cases, the courts awarded $2.9 million and $2.7 million in punitive damages respectively.

Additional points contained in the Forbes article *JP Madoff* (id.) are:

> "For months now, Chaitman and Gotthoffer have pointed out, with irrefutable factual detail, that JPMorgan Chase has been turned into a criminal enterprise on Dimon's watch."; "where the authors compare JPMorgan Chase to the Gambino crime family. There are a lot more similarities than differences."; "[W]hile Dimon complains that it's

---

[3] *NY Federal judge slams Wells Fargo for forged mortgage docs*; New York Post; January 31, 2015; by Catherine Curan.
http://nypost.com/2015/01/31/ny-federal-judge-slams-wells-fargo-for-forged-mortgage-docs/

[4] *Judge faults Wells Fargo in 'shocking' foreclosure*; Boston Globe; AP March 9, 2014; http://www.bostonglobe.com/business/2014/03/09/bank-told-pay-for-shocking-foreclosure/RIObaLejgcc3QedcwA63cJ/story.html

impossible to predict the Bank's legal expenses, the reason is, he can't predict how many times in a given year the Bank will get caught violating the law. And, as pointed out in Chapter 7, if JPMorgan Chase stops breaking the law, it will not only have more predictable legal fees but lower ones. But, of course, it will also have significantly lower profits."; "The different schemes and artifices JP Morgan engages in to cheat its customers underscores why the whole industry needs overhauling and true regulatory oversight. The authors' recitation of JPMorgan's continuing misconduct, again raises the question the authors have previously raised as to how long the American people are going to tolerate a government that gives criminal bankers get-out-of-jail free cards. The impact of too-big-to-fail criminal institutions is devastating for our economy."

A yahoo search of the term "Wells Faro litigation" returns page after page after page of litigation against Wells Fargo resulting in billions of dollars of payouts by Wells Fargo for various frauds against depositors, investors, stockholders, retirement funds, state and federal governments, and courts. The inference to be drawn is that like JP Morgan, Wells Fargo makes more money by breaking the law than by observing the law. Texas should not be a safe haven for such a business model. Wells Fargo's continuing assertions that this Court has no jurisdiction over Wells Fargo in this appeal (Appellee's brief at 8) supports an inference that Wells Fargo lacks any remorse.

## XI. Conclusion and Prayer for Relief

In East Texas, late February is a time for planting potatoes and strawberries. For years, Appellant has cultivated a large garden spot at 186 Tarrant Rd., Bullard (the Houston Property) year-by-year adding nutrients to improve the land. Although Appellant deeply resents being deprived of that garden by a lame duck trial judge who flagrantly violated the Code of Judicial Conduct, he is more strongly affected by the questions of his three year old son Garrett. Every couple of days, Garrett asks: "Papa, when are we going home?" Because Garrett is too young to understand the he has already inherited an inalienable right to the laws' protections, Appellant tells him "the house is being fixed and Papa is working on it".

Appellant's initial brief has already requested the appropriate relief and to that Appellant only adds a plea to the Court to grant the requested relief without delay.

APPELLANT prays for same.

Respectfully submitted,

Robert Robinson, Pro Se
Appellant
16897 Pine Lane
Flint, Texas 75762
(903) 245-0908
cilantro518@yahoo.com

**Certificate of Service**

I, the undersigned hereby certify that a copy of the foregoing document was served on all parties and Counsel on February 24, 2015 as follows:

VIA USPS FIRST CLASS MAIL

Melissa McKinney
Lead Counsel for Wells Fargo Bank, N.A.
Barrett Daffin Frappier Turner & Engel, LLP
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001
(972) 341-0995
(972) 341-0734 Facsimile
melissmc@bdfgroup.com

Robert Robinson

## Certificate of Word Count

I, the undersigned hereby certify that the applicable word count of this document as measured by Microsoft Word is: 4,835.

Robert Robinson




UNITED STATES
POSTAL SERVICE

1000          75702

U.S. POSTAGE
PAID
FRANKSTON.TX
75763
FEB 24. i5
AMOUNT
$2.45
00084137-06

12th Court of Appeals
1517 West Front Street
Suite 354
Tyler, Texas 75702